The central issue in this case is whether or not Mr. Maki established credible evidence on several matters that military status was a motivating factor. The reason I say that is because the problem to me with the MSPB opinion is that both the MSPB and the ALJ sort of looked at the case and concluded backwards of Sheehan that there was no evidence to establish discrimination so therefore my client could not prevail. Let's look at the individual issues that arose because I think the case needs to be taken as a whole. My client joined the DEA by submitting an application a year and a half before he was hired on. In that application he indicated he had service that could qualify as law enforcement service. But the issue wasn't whether it qualified. The issue for the judge and for the board was whether or not Mr. Maki, by accepting a GS-7 position, had waived his right to essentially protest the issue. And we know that because the evidence presented at the hearing itself was that Mr. Maki's testimony was credited by the judge and there was no contrary testimony to show that he couldn't qualify as a 9 and couldn't have been brought in as a 9. Do I remember correctly that Mr. Maki he applied for the GS-7 position and he was given the option to withdraw his application and apply for the GS-9 position? Do I remember that and he chose not to do that? Do I remember that correctly? Well, I wouldn't say he was given the option. The way that it happens is he applies for a position. The grading is done at the time he comes on board and he was told, if you don't want the GS-7, you're going to have to reapply and it might be a couple of years. And the reason that's significant, Your Honors, is because 37 years ago in Seeger v. Civiletti, the same issue was raised for African-American agents who were complaining that they were given the same choices. And there, Judge Robinson said in the district court that started almost 40 years of litigation, when decisions on graded entry are made in a subjective fashion without objective standards guiding the exercise of discretion, there is great potential for abuse. And she found that the manner in which the DEA was grading agents, doing this sort of after the fact without any writings or standards or anything they could go after, was an abuse and was in fact an expression of discrimination itself. No different here. Because what happened is when the agency was asked to produce actual evidence of what their grading standards were, they had in our supplemental appendix, they relied on Mark Webb, who was never really designated to talk about that issue. He was going to talk about promotions. And I asked Mr. Webb the penultimate question, I'm asking you, do you know, I mean, I want to make sure I understand your role as a witness here. Are you testifying that you have knowledge of how the agency selects a 9 versus a 7 for an incoming position? The answer, I do not know. Now, against that testimony, we have Mr. Mackey's testimony, which was uncontroverted, that I applied for it, I was told I was going to come as a 7, I protested it, and I was threatened that if I protested it, I would lose the right to be employed and would need to reapply. You're telling us that there was a USERRA violation at that stage in that interaction? Yes. At the threshold, but there was no objection raised until these ensuing events, is that right? No, he raised the objection at the time that his military service should be credited, that he had law enforcement experience in the Coast Guard as a boarding officer and as somebody who worked at hearings. And if you look at the actual application, it talks about things that are akin to law enforcement. He testified at hearings, he presented evidence, he gathered evidence, he helped formulate suggestions for penalties, things of that nature. He had that for a year, and then he had additional experience as a boarding officer, so when he was hired, he called Joe Love, the recruiter, and said, look, I should be hired as a GX9. And at that point, he was told, if you're going to do that, we're revoking this position, you'll have to reapply to the next class. Because of the military service? Right. Because this is where the difficulty arises. There are obviously difficulties, but this action ties it to military service and discrimination. Well, the only reason he was protesting it is because he was saying that you're not crediting my time in the military as active law enforcement, and he testified that other members of his class who had civilian law enforcement of a year or more were being given GS9s. And that's the issue. Did the DEA look at military law enforcement experience as less significant than civilian law enforcement experience? And he presented evidence at the hearing, yes. Because my class members that were civilian law enforcement got 9s when I got a 7, and when I protested that fact, I was told that I would lose the right to come into this class. And the only argument advanced by the agency and accepted by the board was, well, since he accepted the position, that's the issue. Didn't they also say that the military experience was provided on the SF-86, and so that impacted? We said that. I'm assuming that that didn't even count. I'm accepting their premise that the SF-86 wasn't reviewed by the agency, although there was no evidence whatsoever on that issue. And in fact, you're not given an offer of employment until after the SF-86 is reviewed for security clearance purposes. So we found that hard to believe, but I'm accepting the premise that the board itself identified as the basis, which is the sole issue, they said, is he accepted that position as a GS7. You can't accept a discriminatory act. In an Equal Pay Act case, if I take less pay as a woman and I'm then protested later on, it doesn't mean I've waived the right because I took the job. That would turn discrimination law on its head, and that's just the beginning of the process. Then right after he is activated to long-term duty as a reservist, he's switched around within the agency to multiple transfers. Now, that, under Kedlinski, is not a material adverse action, and though I argued that case and I disagree with it, that is the law. And so what we have there, though, is an expression of the animus he faced for long-term reservist duty, which he would switch back and forth. I looked at the record to analyze this, and it's my understanding that two of the transfers occurred before September 27, 2001, which was the date that Mr. Mackey was first informed that he was being called to active duty. Do I understand that correctly? Correct. But there were a series of transfers that occurred after he came into active duty. When he came back on active duty, they put him in marijuana interdiction. And then what they did was those transfers as Jerome Hutchinson. I mean, this wasn't a case where we were just relying on Mr. Mackey, and I'll get to that in a second. An actual supervisor came in and said, yes, this would signal to an agency that this is a problem child. This is a difficult person to work with, and there's a problem with him. And that occurred in connection with his military service. So we then presented evidence. And, again, the issue is did the judge credit that testimony, and then did she analyze it correctly under SHEA? Does the fact that two of the transfers occurred before any military service, does that in any way undermine the claim that these transfers were just because of military service? No, because there is some legitimacy to transferring new agents in between sections. The problem is the majority of the transfers occurred either while he was on military service or afterwards. And when he came back, they put him in marijuana interdiction, which was a low-priority section by any stretch of the imagination. And he complained about that and, again, was told to simply accept it. And, again, we brought in actual evidence from a supervisor that could indicate that there was a problem. And, again, if that's connected with military service, then we have met our first prong under SHEA. And the problem is on all these issues, we met our first prong under SHEA, and they were never asked to conduct an affirmative defense. They were never even asked to really present evidence. When we raised this issue about his transfers, they never presented any of the supervisors at the time. They never brought anyone in to disagree with his view that his transfers were retaliatory or that they were related to his military service. And, in fact, the only supervisor that did testify supported him, which was Jerome Hutchinson. The same was true when he was in the asset recovery group. Even the special agent in charge said this is a backwater section. I've never promoted anybody out of it. People like it. Older agents like it because they can work 9 to 5. He was sent there right after a tour of duty. Can I ask you to switch gears just a little bit and focus for a minute on your legal contention about 2312E? Can you just explain?  It is. Yes. Certainly. Identify for me precisely what aspect of the conduct of the case that position bears on. Well, whether that's seen as a reemployment right or simply a discriminatory act, my client, our position is he is entitled under the statute to 90 days to return to duty following extended deployment. And the agency itself and its employee military leave activation package. I'm sorry. And when specifically was he denied that asserted right? Assume that you have that right. What's the consequence here? He was told while he was on military service, if he didn't return immediately after active duty, he'd be in trouble. That was uncontroverted. In fact, we had another supervisor. We had another employee. And he did return? He did. He was forced to return. So what harm? Well, he was denied the 90. The whole purpose for the recovery period is to recognize the difficulties of active duty military service and allow you to reintegrate. Suppose his right to the 90 days was violated by being told you didn't have it and he returned. Therefore, what relief can you get? You could enjoin the agency from doing that again. Or you can credit him 90 days of back time that he could get as potential leave to compensate him for that loss. I mean, the whole purpose for that leave is to recognize the impact of military service and the transition that's needed. Otherwise, Congress wouldn't have imposed it. And the only case that runs against it was an eight-hour case where somebody had to come back that day. Yeah, but that's the Third Circuit case, which did a fairly full, though I know you disagree with it, statutory analysis. Pre-changes in the law that expanded the rights of use. So what are those changes? Well, the 2011 Congressional Act, which established the hostile work environment, seems to indicate that Congress wanted to give veterans as much leeway as possible on these issues and protect them. But is there some language change in the statute on 4312A and E? I don't believe so, but I'm not sure that even if you accept the Third Circuit's premise as a right, that that does much. Because the agency itself, under its own policy, under its employee military leave activation package, under Section 10 of that package, which defines the rights within or the privileges within the DEA, grants the employee the right to determine that. What the supervisor, Kressage, did was she took that right away, or that benefit away. She said, you're going to come back. She was even told point blank by another person she could not do that. I mean, she was told it was a violation of USERRA, specifically by another employee, and she rejected that. And when he came back to duty, what did she have him do? The necessity for him to come back right away so he could cut ribbons and make dollies and put out postcards. So, again, I think that shows that his military service was demeaned in that respect. And, again, what we have on the hostile work environment claim is the board accepted the premise that we established in Kedlinski, which I also argued that you don't have to have a current hostile work environment. Yet the board sort of redid the evidence and said, well, this doesn't really rise to level of a hostile work environment. But they didn't look at the case as a whole. They didn't look at it that if you look at the case as we look at it, from the outset to today, my client's military service as a reservist has caused him to be placed in positions that are noncompetitive. And we think that that's the issue. I mean, what is the issue for individuals in the military if they know that subtly or not so subtly their employers are going to do this to them? And I think that there's enough evidence in this record that at minimum the ALJ should have decided he's met the first prong of Sheehan. Okay, now, agency, why did you do this? Instead, she blasted past that. She said, well, there's no discrimination. She didn't even do the balancing test that Sheehan requires. The significance of that is unlike Title VII, this court has repeatedly said that once we show military service as a factor, as a motivating factor, as something they considered, it's up to them to come forward with evidence and say why they did it. Instead, we had a burden beyond a reasonable doubt. In the opinion that's stated, our witness is maligned because by both the ALJ and the MSPB that the only testimony we have is hits. Right, but there's no contrary evidence. And if I was in the district court or if I was in a federal trial or even a state court trial, evidence, non-evidence, evidence wins. And it's not up to the MSPB or the ALJ to discount the testimony of an appellant merely because they're an appellant. In this case, we had two people come forward to support him directly on point. And yet the judge blasted past that as well and dismissed that without even really much of a discussion. She didn't really discuss Cresage's, the issue of Cresage being told by another employee that she was violating USERRA. And so, Your Honor, we think that the problem with the case when we come to it is that at the end of the day, the court did not apply, the ALJ did not apply the right standard under SHEIN. And that standard has to mean something. If a court could simply avoid SHEIN by saying, well, we looked at this and we decided no discrimination, then SHEIN means nothing. Because you take away the way in which the evidence presented. And SHEIN ultimately, as all discrimination law, is about how evidence is presented, who has burdens, who must produce what. That was not done here. We ask you to reverse. Thank you. Ms. Moses. Good morning, Your Honors, and may it please the Court. I want to first address the idea that the board applied the SHEIN factors in a backward analysis. That's certainly not true. And the record reflects that first, as it should properly be done, the administrative judge looked at whether Mr. Maki met his initial burden of showing that the agency discriminated against him based on his military service. It made a factual finding that the agency did not as to his claims regarding specifically discrimination. And I agree that the case should be looked at as a whole. Mr. Maki has been promoted many, many times. He is from, what the record reflects, now a GS-13. He started as a GS-7. His supervisors have glowing remarks to offer about him. It shows that he has received, the record shows that he has received good performance evaluations and that he hasn't been delayed in receiving any of his promotions during the time that he has been employed. Specifically also with respect to this 90-day period that Mr. Maki assumes that he is entitled to, the statutory language is sufficient. Before you get to that, because that actually is of some concern to me, I'd like you to help me understand what role that plays in this case. The 90-day leave period? The assertion, if he made it, that he was entitled to 90 days of leave before he had to return to work. To work. Procedurally, it was, and the case has some of the theories have slightly evolved over time. But one of the claims was, now he's stating, was for a re-employment claim. The administrative judge correctly determined that that particular claim was not raised and was not properly before him to decide. The 90 days leave- Assume for a minute that that was fair, to say you just didn't preserve it. What else is there to do with the statutory assertion that 4312A and E together give a right to re-employment even if you wait 90 days before giving notice? It also appears that Mr. Maki raises the 90-day leave to prove hostile work environment. That this denial of the request for a 90-day period to return to work served as evidence of a hostile work environment. But the administrative judge and also the board found that he could not meet the standard for hostile work environment because there is no right to this 90-day leave period as he claims it is. If we were to conclude that actually there is such a right and to disagree with the Third Circuit's view on that question, drawn not in the 90-day context, but in the eight-hour context, what consequence would that have for this case? It really wouldn't change the outcome because what he requested was a 90-day period before returning to work, but that's not a paid period. There really is no remedy for that at this point. Would we have to, though, remand it for the board to decide that in the first instance? Because they were looking at the overall hostile work environment claim with an understanding of the law that may have been incorrect, just assuming for a minute that it was incorrect. Wouldn't we have to remand? Well, the court certainly can make a legal determination whether remand is necessary. In this case, remand certainly would not be necessary because he can't ... He hasn't articulated a reason why remand would be appropriate for the hostile work environment claim. He just hasn't even met his initial burden of proving that the agency had some sort of negative attitude toward his military service, such that he was subjected to a pervasive pattern of harassing behavior that altered the terms or conditions of his employment. Your view is that even if it were true that he was entitled to 90 days, that that's just one event? It's not pervasive? Is that what I understand you to be saying? Yes, Your Honor, that is what I'm saying. Did the board rely on the Third Circuit Gordon view of 2312 in rejecting the hostile work environment claim? I believe it did, Your Honor, but ... Let me just double check, please. Well, the way that the board reviewed that particular claim, the entitlement to 90 days, was under the hostile work environment umbrella. While the court did not rely on that case in particular, it certainly supports our position that there is ... Where, if anywhere, did the board say one reason that we are rejecting the hostile work environment claim is that, in our view, he actually had no such 90 day right? Because if it didn't rely on that, then whether or not he had such a right would not make any difference in this case. The board didn't rely on that finding specifically as it relates to hostile work environment claim. Really, because of the way that the claim was presented, it was more so presented as a re-employment claim. But I'm putting aside any ... I'm taking as a given, for purposes of this discussion, that the board and the AJA did not abuse their discretion in saying the re-employment claim was not sufficiently pursued. Can you address for a minute, I guess, the merits of the 2312 point? Here's, I guess, my question. 2312, and correct everything that needs correction, what I'm saying. 2312A says you get your re-employment rights if you do a number of things. You give notice before you leave, and then you comply with E in reporting or giving notice when you come back, basically. E, the relevance portion on the long-ish term military service, says what you shall do is report within, I guess, 90 days. Why together does that not mean you have a right to your re-employment, if you comply with that, nobody can make you do more? Contrary to what the Third Circuit said. The purpose of 4312 is to secure re-employment rights for a returning military service member. It does, in fact, stand for the proposition that if you comply with these notice requirements, then the employer must promptly re-employ you, a right to which you are entitled under Section 4313. Nowhere in the language does it say that the employee is entitled to a 90-day period, in the sense that it mandates the employer to allow the employee to have a 90-day period of leave. Why doesn't the language of 2312A, in effect, do that? It says you have your re-employment right, if you comply with E, the relevance section of E says you must do the 90-day notice. Why putting those two things together does A, not mean nobody can take that right away from you by saying, oh, you don't actually have 90 days, report tomorrow. Well, sorry, I just want to take a look specifically at the language of the statute here. Is this actually 4312? 4312. And A says, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to re-employment rights and benefits and other employment benefits of this chapter, if. And then go down to three, right? Three is the relevant one, right? Right. Except as provided in F, the person reports to or submits an application for re-employment to such employer in accordance with the provisions of subsection E. And you go to E and the relevant one. Yes. Different paragraphs according to how long you were away, right? Right. Yes, Your Honor. And in this particular paragraph that's relevant to this case here, the employee is required to submit an application for re-employment with the employer not later than 90 days. What this does is it prevents an employer from delaying or denying a returning military service member's employment. And typically in the cases that I've read, it's that the employer is somehow trying to deny or delay re-employment. Whereas here, Mr. Maki is trying to sort of flip it on its head and say, he's trying to delay. And he's saying that this statute entitles him to do so. But that's just not the purpose of this is not to allow for mandatory leave period. Mr. Burns made passing reference to host 2004 statutory changes, enactments, 2004 being the date of, I think, Gordon and the Third Circuit, which does quite clearly answer this question in a way supportive of the position that you are asserting. Has there been either changes that would require modification or justify a different result than Gordon? Or have there been re-enactments that I guess one term one might use is ratify Gordon? I am not aware of any changes that would undermine our position or run contrary to how Gordon and Third Circuit has clearly, clearly supports our position that this particular statutory provision just does not provide a right to arrest period. And a later case that I don't know if we say this in our brief, but the Fourth Circuit also had supports our position as well. What is it, Francis? Francis v. Booz. That's 452 F3D 299. Yes. And then I also believe that Petty, which Mr. Mackey cited in his opening brief and possibly reply brief as well, the Sixth Circuit also supports our construction and the Third Circuit and the Fourth Circuit's construction of. Can you repeat the name of the Sixth Circuit case? Yes. That is Petty. Petty v. Metropolitan Government of Nashville, Davidson County. The citation is 538 F3D 431. That's a 2008 case. Francis is presumably around 2006. Yes. And if your honors don't have any further questions, we ask that you affirm the board's decision. Thank you, your honors. I'll be very brief. A couple of things, I think, that sum up what we said. Council said that the board decided there was no discrimination and that's why they didn't go any farther. But the penultimate question of discrimination is only decided after applying the burdens. So you can't, the only factor, the only emphasis on the factors was military service involved in the decision making. We don't have to, in the first premise, prove discrimination. Otherwise, there wouldn't need to be a standard. The second thing they said is on the reemployment right is, again, I think whether, if I accept the agency's premise and I accept the premise that it wasn't pitched the right way, which I disagree with because it was raised and, you know, we cited in our case law that you can conform evidence to proof and I'm not sure there's any case that says that you have to specifically cite the type of discriminatory conduct. But be that as it may, the agency itself grants that right for him to have that right to return. My point is that Congress set a sliding scale based on the amount of military service. Congress did not create a right for employers. It created a right for employees and it created a respite period so that returning veterans, returning reservists, particularly coming back from overseas or other combat operations, whatever, could have time to readjust. That's why it's a sliding scale based on the amount of service. Whether or not it was a quote right, certainly he was denied the opportunity to even apply for it because prior to anything happening, his supervisor literally called him while he was in active duty and said, you're returning the next day. And, again, I think that it's important in looking at the hostile work environment claim that we didn't raise, the board never really addresses that very much. It spends about a sentence on it. The issue is that when he got back, this all-important reason, he was given menial tasks, menial labor, demeaning conduct. And that's part of a pattern where he is, I know they say they promoted him, but they only promoted him along the chain of those promotions he's entitled to. And they delayed those promotions by a year. So I'm not sure the fact that they followed certain procedures excuses them from not following others. I'll finish with this. The issue of discrimination on any type of discrimination is the psychological attack on the individual because of their status. It is the message that is sent to the recipient that you are not equal, that your factors, you're doing something we don't like, and we're going to make it tough for you. Now, a hostile work environment, as the Supreme Court has recently said, does not have to simply consist of direct statements that I'm harassing you. If you look at this case as a whole, this gentleman's military service has never been credited for what it is. And I can't think of nothing worse. And by the way, there is reference to an email in this case where one of the supervisors called the men who filed these suits, two of the men, cowards. And that went by the SAC as a matter of opinion. It's in the record. I can't think of anything worse for a returning military reservist who spent a year or more in active duty service to be told by an employer, you need to come back here tomorrow because I have some ribbons I want you to cut. That is this case in a whole. The government can say whatever it wants about how Mr. Mackey was treated, but Mr. Mackey was cutting ribbons as a GS-13 special agent against his will. And as I said in my brief, and I'll finish with this, the government gets around that harassment by saying, well, many agents volunteer. And as I say, I volunteer to clean the coffee pot every now and then in my office. I certainly resent the fact that it was made my primary duty. Thank you, Your Honor. Thank you. Thank you both. The case is taken under submission.